## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:23-cr-00013-SVN |
| | ) | |
| v. | ) | |
| | ) | |
| DICKSON ALORWORNU, | ) | |
| *Defendant*. | ) | |
| | ) | |
| | ) | March 11, 2024 |

### RULING ON DEFENDANT'S MOTION TO DISMISS THE INDICTMENT AND MOTIONS TO SEAL

Sarala V. Nagala, United States District Judge.

On January 25, 2023, a grand jury sitting in the District of Connecticut indicted Defendant Dickson Alorwornu on two counts of wire fraud in violation of 18 U.S.C. § 1343. On the eve of jury selection, Defendant moved for dismissal of the indictment claiming the Government violated its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. The Court denied the motion in a bench ruling and indicated that a written ruling was to follow. Following a continuance of the trial date for other reasons, the Government requested an opportunity for further briefing. The Court treats the further briefing from the Government as a motion to reconsider certain findings in the bench ruling, while maintaining the portion of the ruling that denied the motion to dismiss the indictment. For the following reasons, the Court has reconsidered those findings, and retains its original conclusion that Defendant's motion to dismiss the indictment is DENIED.

### I.      FACTS

#### A.  The Charges and Investigation

The indictment charges that, from on or about December 14, 2017, through at least February 26, 2018, in the District of Connecticut and elsewhere, Defendant, knowingly and with

intent to defraud, devised a scheme whereby he obtained individuals' credit card information without their permission, provided materially false information to the University of Connecticut ("UConn") in order to establish student accounts under false names, caused the student accounts to be funded by initiating charges on the stolen credit cards, and then sought refunds from UConn of those funds into bank accounts he controlled.  *See* Indictment, ECF No. 1.  The indictment charges two counts of wire fraud in violation of 18 U.S.C. § 1343 based on an interstate electronic communication from a payment service company in the amount of $500 on February 3, 2018, and an interstate electronic communication from a payment service company in the amount of $2,000 on January 29, 2018.  *Id.* at 2.  Defendant has pleaded not guilty to the charges in the indictment and invokes his constitutional right to a trial by jury.

The investigation underlying the charges began in February of 2018, after the UConn Bursar's Office received notice that a credit card holder had disputed charges allegedly made by UConn with American Express.  The investigation was led by UConn Police Officer Marc Hanna. *See* Gov't Supp. Opp. Mot. Dismiss, ECF No. 126 at 2.  Investigators sought records from Google, payment services providers, internet service providers, and financial institutions, and identified Defendant as a target around March of 2018.  *Id.* at 3.  The Federal Bureau of Investigation ("FBI") opened an investigation a few months later on August 7, 2018, though Officer Hanna remained the lead case agent in his capacity as a task force officer with the FBI.  Def.'s Mem. Mot. Dismiss Indictment, ECF No. 104 at 1–2.

Officer Hanna remained the lead case agent until January of 2022, when he was replaced by an FBI agent and transitioned to a part-time role on the investigation.  *Id.*  Officer Hanna was the sole government witness to appear before the grand jury that returned the indictment against Defendant on January 25, 2023.

B. <u>Officer Hanna</u>

A series of allegations have emerged against Officer Hanna.[1]  The first of two internal affairs investigations took place in the summer of 2022.  It concerned derogatory comments Officer Hanna allegedly made towards a colleague that referred to her status as a bilingual minority female, and that he had disclosed to another officer confidential information concerning an ongoing internal affairs investigation.  *See* First Investigation Rep., ECF No. 104-1 at 27.  The first investigation report found that Officer Hanna's comments toward the colleague had been

---

[1] Defendant moves to file his memorandum in support of the motion to dismiss the indictment, and all supporting exhibits, entirely under seal, because this material was designated as protected discovery by the Government.  *See* Def.'s Mot. Seal Mem. Mot. Dismiss Indictment, ECF No. 103.  Defendant also moves to seal Exhibit A of its supplemental brief because it contains confidential information.  Def.'s Mot. Seal Ex. A, ECF No. 130.  The Government similarly moves to seal portions of its opposition papers which either contain or describe the two investigative reports, notice of predisciplinary conference, and stipulated last chance agreement concerning Officer Hanna in detail.  Gov't Mot. Seal Mem. Opp. Mot. Dismiss Indictment, ECF No. 128.  The Government requests that the Court only disclose the following in light of privacy concerns:  "(1) the fact that there was an internal investigation by UConn concerning TFO Hanna's conduct towards fellow officers and employees at UConn; (2) the allegation that TFO lied to a superior officer and to investigators; (3) the resolution of that allegation, to the extent any determination was made concerning his truthfulness or lack thereof; and (4) the date and nature of any discipline imposed."  *Id.* at 1.

Pursuant to Local Rule 57, "[a]ny document that a party presents to the court, which is relevant to the performance of a judicial function and useful to the judicial process, is a judicial document to which the public has a presumptive right of access under the common law."  D. Conn. L.R. 57(b)(3)(A).  The Court may order sealing "only if it makes particularized findings on the record that the presumption of access to the particular document is outweighed by countervailing factors in favor of sealing, such as the danger of impairing law enforcement or judicial efficiency, and privacy interests."  *Id.*

The Court cannot find that sealing the entirety of Defendant's memorandum and exhibits, and all details of the investigation into Officer Hanna aside from those proposed to be made public by the Government, is warranted, and therefore denies ECF No. 103 in part.  The Second Circuit has recognized that there may be a privacy interest weighing against the disclosure of materials relating to internal affairs investigations.  *See Newsday LLC v. County of Nassau*, 730 F.3d 156, 166–68 (2d Cir. 2013).  The Court has accommodated these privacy concerns by only citing information that is relevant to its ruling and that will "materially assist the public in understanding the issues before the district court, and in evaluating the fairness and integrity of the court's proceedings."  *Id.* at 167.  For example, the Court must cite portions describing what Defendant characterizes as Officer Hanna's potential intimidation of a witness, his allegedly derogatory remarks, and his lack of veracity, as Defendant characterizes this as evincing potential prejudice in the investigation.  The Court unseals such details by describing them in this ruling, and will order that Defendant file a redacted version of ECF No. 104 by March 25, 2024.  The Court grants the Government's motion to seal, ECF No. 128.  As the Government's redactions in its supplemental memorandum appear narrowly tailored to protect the compelling privacy interests at stake, it need not refile its memorandum with further information unredacted.  Last, the Court denies Defendant's motion to seal Exhibit A, ECF No. 130.  Although Exhibit A identifies some of the individuals involved in obtaining Officer Hanna's files, the privacy concerns are low, and the exhibit does not otherwise contain confidential information.

"misconstrued," but that he "exercised poor judgment" in disclosing the confidential information about the internal affairs investigation. *Id.*

The second internal affairs investigation took place in February of 2023. It concerned complaints of inappropriate workplace conduct by Officer Hanna toward female colleagues; it further alleged that Officer Hanna had contacted a female officer to cause her to withdraw one of the complaints, and then lied to internal affairs investigators about doing so. Second Investigation Rep., ECF No. 104-1 at 20. Officer Hanna was interviewed and admitted to engaging in behavior that was inappropriate for the workplace; having been instructed not to contact the female officer; and calling the female officer notwithstanding this instruction. *Id.* at 20; May 10, 2023, Not. of Pre-Disciplinary Conf., ECF No. 104-1 at 31–32. Officer Hanna told his superior officer and investigators that the purpose of the call, which the female officer did not answer, was to reschedule a meeting. Second Investigation Rep., ECF No. 104-1 at 16, 20. He further stated that he had spoken to a second officer about rescheduling the meeting, to buttress his position that the call to the female officer was for this purpose. *Id.* at 17. The second investigation sustained allegations of inappropriate workplace conduct, and found that Officer Hanna had made a false statement when he told his superior officer that the call to the female officer was for the purpose of rescheduling a meeting, because—based on a "preponderance of the evidence"—no other team member had been called regarding rescheduling the meeting in question, and Officer Hanna had actually contacted the female officer for the purpose of causing her to withdraw the complaint against him. *Id.* at 20.

By letter dated May 10, 2023, UConn provided notice to Officer Hanna of a pre-disciplinary conference based on the findings from the two internal affairs investigation reports. May 10, 2023, Not. of Pre-Disciplinary Conf., ECF No. 104-1 at 29. It detailed the alleged

derogatory remarks and inappropriate workplace conduct; it further stated that Officer Hanna called the female officer despite orders not to do so and lied that it was for the purpose of rescheduling a meeting. *Id.* at 31. The notice also mentioned Officer Hanna's second lie about claiming to have spoken to another officer about rescheduling the meeting, as well. *Id.* The pre-disciplinary conference was held on May 24, 2023. *See id.* at 36.

On July 19, 2023, Officer Hanna, the UConn Police Department, and the Connecticut Police and Fire Union signed a "Stipulated Last Chance Agreement" as "full and final settlement" of the misconduct referenced above, which demoted Office Hanna from Sergeant to Detective and reduced his pay. July 19, 2023, Stip. Last Chance Agt., ECF No. 104-1 at 36. The agreement lists Officer Hanna's violations of the Police Department's Standard Operating Procedures and the University's General Rules of Conduct and Code of Conduct, but does not contain any admissions by Officer Hanna or any actual findings of wrongdoing. *Id.*

## II.     PROCEDURAL HISTORY

A flurry of activity occurred between the Wednesday before Thanksgiving and the eve of jury selection in this case, which was scheduled to take place on November 28, 2023.

On November 22, 2023, the Government filed an *ex parte* motion, later shared with defense counsel, seeking a protective order that would allow it not to disclose evidence of the misconduct and discipline relating to Officer Hanna unless he was called as a defense witness (he was not listed as a government witness). Gov't *Ex Parte* Mot., ECF No. 99. At that time, the Government had only obtained the May 10, 2023, notice and July 19, 2023, stipulated last chance agreement; not the two underlying reports describing the allegations and investigations in greater detail.

On November 27, 2023, the Court held an *ex parte* telephonic hearing with only counsel for the Government present, where it granted in part and denied in part the Government's motion

and ordered that some, but not all, of the information recounted in the Government's motion be disclosed to defense counsel by end of day, November 27, 2023, before defense counsel would make a decision about whether to call Officer Hanna as a witness.  The Court ordered the following information disclosed to Defendant:

> (1) The fact of an internal investigation regarding the potential witness's conduct toward his colleagues;  (2) That the potential witness was accused of lying to another officer and to internal investigators (allegation 2(f) [from the May 10, 2023, notice]); (3) The resolution of that particular allegation, to the extent any determination was made concerning the potential witness's truthfulness or lack of truthfulness; (4) The date of the imposed discipline; and (5) The nature of that discipline.

Ruling on Gov't *Ex Parte* Mot., ECF No. 105 at 2.  The written ruling was later unsealed.  The Court also encouraged government counsel to obtain the underlying investigation reports, which it did not have at the time of the telephonic conference.

Later that day, at 3:59 pm, defense counsel separately obtained the entirety of Officer Hanna's internal affairs file when it received a response to a Freedom of Information Act ("FOIA") request it had filed with UConn on October 31, 2023.  ECF No. 104 at 3.  That night—the night before jury selection—Defendant filed a motion to dismiss the indictment on the grounds that the Government had violated its obligations under the Court's Standing Order on Discovery, Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No. 116-182, 134 Stat. 894 (Oct. 21, 2020), and *Brady v. Maryland* and its progeny by failing to disclose to Defendant any information about the investigation of Officer Hanna.  Mot. Dismiss Indictment, ECF Nos. 103–104.  With the parties' consent, the Court proceeded with jury selection and empaneled a jury, so that the trial could proceed as scheduled if the motion was denied.  The Court directed the Government to file an opposition brief that night, after jury selection.

The following morning, before the empaneled jury was called into the courtroom for opening statements, the Court denied the motion to dismiss the indictment in a ruling from the

bench, for purposes of expediency, and noted that a written decision was to follow. *See* Nov. 29, 2023, Tr., ECF No. 132 at 4. The Court assumed, without deciding, that the evidence concerning Officer Hanna's investigation was favorable to Defendant because it was potentially impeaching. *Id.* at 9–11. The Court then found that the Government had not suppressed the notice and last chance agreement, *id.* at 12–13, but had suppressed the underlying investigatory reports, *id.* at 14. Finally, the Court concluded that Defendant was not prejudiced because he had received the information before trial and it was not of such a volume that it could not be digested before the trial. *Id.*

After the Court denied the motion from the bench, the parties informed the Court that, separately, the FBI had identified new evidence relevant to the case that previous day, and that this evidence was disclosed to defense counsel that very morning. On account of this newly received evidence, the Court granted Defendant's motion to adjourn trial. The case is now scheduled for jury selection on May 28, 2024.

Shortly after the trial was rescheduled, the Government requested an opportunity for supplemental briefing, given the short time frame it was given to respond to Defendant's motion. The Court accepted supplemental briefing from both parties and now issues this opinion elaborating on and reconsidering, in part, its ruling from the bench.[2]

### III.    LEGAL STANDARD

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373

---

[2] The Government's supplemental briefing describes additional investigation it has undertaken into the scope of Officer Hanna's disciplinary investigation. *See* ECF No. 126 at 15–16. This ruling is limited to the information known to the Government as of November 29, 2023, when the Court ruled from the bench.

U.S. at 87.  In *Giglio v. United States*, 405 U.S. 150 (1972), the Supreme Court held that information which impeaches government witnesses "falls within this general rule."  *Giglio*, 405 at 154.  The duty to disclose has since been expanded to include situations where no request has been made by the defendant.  Thus, the prosecutor has a constitutional duty to volunteer such matter to the defense.  *United States v. Agurs*, 427 U.S. 97, 107 (1976).

There are therefore three components of a *Brady* violation:  "[1] The evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued."  *United States v. Jackson*, 345 F.3d 59, 71 (2d Cir. 2003) (alterations in original) (quoting *Strickler v. Greene*, 527 U.S. 263 281–82 (1999)).

Evidence that is favorable to the accused includes "not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness."  *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001).  Exculpatory material, often referred to as "*Brady* material," is information that "relates to the defendant's guilt or innocence."  *United States v. Ulbricht*, 858 F.3d 71, 112 (2d Cir. 2017), *abrogated on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018).  Impeachment material, or "*Giglio* material," is evidence that "directly affects the credibility of a witness."  *United States v. Frank*, 11 F. Supp. 2d 322, 325 (S.D.N.Y. 1998).

Evidence is suppressed for *Brady* purposes "only if [the Government] fails to disclose *Brady* and *Giglio* material in time for its effective use at trial or in a plea proceeding."  *Coppa*, 267 F.3d at 146.  "[T]he time required for the effective use of a particular item of evidence will depend on the materiality of that evidence . . .  as well as the particular circumstances of the case."  *Id.* Under the suppression prong, there is "an exception to the disclosure obligation where the

defendant or his attorney either knew, or should have known, of the essential facts permitting him [or her] to take advantage of [that] evidence.'" *Jackson*, 345 F.3d at 73 (internal quotation marks and citation omitted); *see also Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001) ("Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." (quoting *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982)).

Under the prejudice or "materiality" prong, courts ask "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). The Supreme Court has elaborated that "a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). The question is whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435.

The duty to fulfill these constitutional obligations necessarily falls on the prosecution, as it is "the prosecutor, who alone can know what is undisclosed, [who] must be assigned the responsibility to gauge the likely net effect of all such evidence." *Id.* at 420. As the Supreme Court has recognized, "the prudent prosecutor will resolve doubtful questions in favor of disclosure." *Agurs*, 427 U.S. at 108.

## IV.   DISCUSSION

Given the timing of Defendant's motion—filed the evening before jury selection, on November 27—the Court necessarily endeavored to rule quickly after it empaneled the jury on November 28. The Government was given only three hours after jury selection finished to file an

opposition brief, and Defendant filed a reply a few minutes short of midnight on November 28. For purposes of expediency, the Court denied the motion in a bench ruling around 9 a.m. on November 29 for failure to show prejudice.

In its bench ruling, the Court assumed without deciding that the evidence in question was favorable to Defendant.  ECF No. 132 at 9.  It then made a finding that the May notice and July agreement were not suppressed because the Government filed an *ex parte* motion seeking the Court's views about potential disclosure to defense counsel; but the two underlying investigative reports had been suppressed because the reports were in the Government's constructive possession, but had not been raised as part of that *ex parte* motion.  *See id.* at 13–14.  Nonetheless, the Court was unable to find that Defendant had been prejudiced because defense counsel received the 36 pages of evidence sufficiently in advance of trial.  *Id.* at 14.  The Court concluded that dismissal of the indictment was not otherwise warranted as a sanction for egregious prosecutorial misconduct.  *Id.* at 17–18.

After the opportunity for supplemental briefing, the Government has "point[ed] to controlling decisions . . . that the court overlooked" which "might reasonably be expected to alter the conclusion reached by the court."  *Van Buskirk v. United Grp. of Co., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).  The Court now finds that the evidence is not favorable to the accused.

The Court nonetheless finds it appropriate to discuss the suppression and prejudice prongs in this written ruling to ensure it accurately states the applicable law.  Even assuming the evidence was favorable to the accused, as the Court did in its bench ruling, none of the evidence was suppressed, under Second Circuit precedent.  Further, rather than consider the timing of the disclosure under the prejudice prong, as it did in its bench ruling, the Court should have considered

this information under the suppression prong.  Finally, while the Court does not alter its holding

as to the materiality/prejudice prong, it further elaborates on that holding below.

      A.  <u>Favorable to the Accused</u>

      Rather than assuming without deciding that the material in question is favorable to the

accused, the Court now finds that it is not.  The material in Officer Hanna's internal affairs file is

neither exculpatory nor impeaching.

      First, the material is not exculpatory because it does not relate to Defendant's guilt or

innocence.  Defendant characterizes the evidence that Officer Hanna contacted an officer to cause

her to withdraw a complaint against him as the potential intimidation of a witness; the allegations

of derogatory remarks relating to an officer's status as a bilingual minority female as evidence that

Officer Hanna may harbor biases against Defendant, who is a person of color and was not born in

the United States; and the finding of lying as evidence of his untrustworthiness.  Defendant argues

that the evidence may be used at trial to undermine the integrity of the investigation underlying

the indictment, which Officer Hanna led.  For example, defense counsel would potentially question

witnesses on investigative leads that had not been pursued, and other choices Officer Hanna made

to steer the investigation towards Defendant.[3]  On the abbreviated timeline of the bench ruling, the

Court cautiously adopted Defendant's arguments and assumed without deciding that the evidence

was favorable to the accused because it "appear[ed] to be impeaching," even if it was not

---

[3] Until Defendant filed his motion to dismiss the indictment, the Court did not have the benefit of understanding Defendant's theory of how this evidence may be exculpatory.  This is a fundamental challenge, given that *Brady* places the burden on the prosecution to determine whether evidence should be disclosed, and that it is appropriate for the prosecution to "take the Court into its confidence, through sealed and *ex parte* application, so that the need for disclosure can be adjudicated prior to trial" without defense counsel present.  *United States v. Orena*, 145 F. 3d 551, 560 (2d Cir. 1998); *see also United States v. Pugh*, No. CR. 3:02-CR-69(CFD), 2003 WL 22132912, at *1 (D. Conn. Aug. 29, 2003).  Although the Government has a responsibility to ensure that "justice shall be done," *Berger v. United States*, 295 U.S. 78, 88 (1935), it is defense counsel who zealously advocates on behalf of his or her client and is best suited to articulate the potential exculpatory value of a piece of evidence.

exculpatory.  ECF No. 132 at 9.  The Court now elaborates on its finding in the bench ruling that the evidence was not exculpatory.

Defendant's broad theory of the evidence's exculpatory value is foreclosed by *Ulbricht*.  In *Ulbricht*, two undercover agents, Force and Bridges, took over a Silk Road administrator account as part of their investigation into the website.  The agents used that account to change other users' passwords, empty the users' Bitcoin wallets, and keep $350,000 worth of Bitcoin in offshore accounts for themselves.  *Ulbricht*, 858 F.3d at 84–85.  Force also retained Bitcoin from his authorized undercover work for personal use, and attempted to extort money from Silk Road's founder by telling him that he knew his real identity.  *Id.* at 85.  The district court denied Ulbricht's pretrial requests for discovery related to the investigation into the corrupt agents and, further, denied his motion for a new trial made on *Brady* grounds because Ulbricht had not learned of Bridges' misconduct until after trial.  *Id.* at 86.

The Second Circuit affirmed, holding that evidence related to the two undercover agents' corruption during the investigation was not exculpatory under *Brady* because it did not relate to the defendant's guilt or innocence.  *See id.* at 113–14.  At most, defense counsel in *Ulbricht* had theorized that because one of the officers had attempted to frame another individual for his corruption, he may have fabricated evidence against the defendant as well.  The Second Circuit found that this was "simply too speculative."  *Id.* at 114.  The same is true here.  Defendant's argument that Officer Hanna's misconduct somehow taints the integrity of the investigation into Defendant as a whole does not rise above speculation.

The Court acknowledges that Officer Hanna appears to have played a larger role in this investigation than the two undercover agents in *Ulbricht* because he was the lead case agent from February of 2018 to January of 2022.  But unlike *Ulbricht*, Officer Hanna's misconduct is not as

severe and is not directly related to the investigation underlying the charges against Defendant. The Second Circuit acknowledged that regardless of whether an agent played a "pervasive role" in the investigation, the defendant must show "how information related to [the officer's] corruption exculpates [him or her]." *Id.*[4]  Defendant has not done so here.

Second, the Court rejects Defendant's arguments that the information about the investigation of Officer Hanna is favorable to the accused because it is impeaching.  The Government has an obligation to disclose impeachment materials "whether those materials concern a testifying witness or a hearsay declarant." *Jackson*, 345 F.3d at 71 ("A contrary conclusion would permit the government to avoid disclosure of exculpatory or impeachment material simply by not calling the relevant witness to testify."); *see also United States v. Perez*, No. 05 CR. 441(PK), 2005 WL 2709160, at *4 (S.D.N.Y. Oct. 20, 2005).  Officer Hanna was listed as a potential witness by the *defense*—not the Government.  Rather than call Officer Hanna as a witness, which would undoubtedly trigger a *Giglio* obligation to disclose evidence that may be used to impeach him, the Government has elected to call Special Agent Michael Morrison as its only law enforcement witness.

Additionally, Defendant has pointed to no cases holding that the Government's disclosure obligations extend to defense witnesses writ large; to the contrary, the Government and Court have identified cases counseling otherwise.  *See LeRoy*, 687 F.2d at 619 ("The rationale underlying *Brady* is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense . . . .); *United States v. Certified Env't Servs., Inc.*, 753 F.3d 72, 91 (2d Cir. 2014) (describing evidence as favorable to the accused if it

---

[4] The Court further acknowledges that, in *Ulbricht*, the government had "purge[d] its trial evidence of anything arguably traceable to Force." *Id.* at 106.  The Court questions whether, in this case, the Government could purge from the trial anything related to Officer Hanna, since he was the lead investigator.  Nonetheless, for the reasons described above, Officer Hanna's conduct is not exculpatory for Defendant.

"is useful to impeach the credibility of a *government witness*" (emphasis added)); *United States v. Rodriguez*, 496 F.3d 221, 222 (2d Cir. 2007) (recognizing that the Government must disclose "material information [in its possession] that impeaches *its* witnesses or exculpates the defendant") (emphasis added)); *United States v. Orena*, 145 F.3d 551, 557 (2d Cir. 1998) ("The government's *Brady* obligation to disclose material evidence favorable to a criminal defendant applies not only to exculpatory evidence, but also to evidence that could be used to impeach *government witnesses*.") (emphasis added)); *see also United States v. Middlemiss*, 217 F.3d 112, 123 (2d Cir. 2000) (rejecting *Brady* claim when "government did not disclose until the eve of trial a memorandum of its interview with [a] potential defense witness . . . [b]ecause defendants already were aware of this allegedly exculpatory evidence").

Nor can the Court conclude that Officer Hanna will be a hearsay declarant at trial. Defendant argues that "to the extent [Agent Morrison] testifies about actions TFO Hanna took in the course of the investigation, [Officer Hanna's internal affairs file] is impeaching." ECF No. 104 at 5. The Court fails to see how Agent Morrison's testimony about *actions* Officer Hanna took during the investigation—as opposed to out-of-court statements Officer Hanna made— render Officer Hanna a hearsay declarant. *See* Fed. R. Evid. 801(a) (nonverbal conduct is only a

"statement" for purposes of the rule against hearsay if the declarant "intended it as an assertion").[5] The Government, for its part, represents that Officer Hanna will not be a hearsay declarant at trial, as it will not attempt to introduce, through Agent Morrison or any other witness, out-of-court statements by Officer Hanna. The evidence is also not impeaching because Officer Hanna's credibility will not be at issue in the trial. *Ulbricht* recognizes that, even if an investigator is not called as a government witness, if the Government's trial evidence relies on the investigator's credibility, "his character for truthfulness would [be] at issue during the trial, and information that impeached his credibility would [be] highly relevant. . . . ." *Ulbricht*, 858 F.3d at 108. The Government represents that none of its evidence relies on Officer Hanna's credibility, as it will attempt to prove its case almost exclusively through business records of banks, internet service providers, and other entities obtained by way of subpoenas or search warrants. The reliability of the Government's documentary evidence simply has nothing to do with Office Hanna's credibility. To the extent witnesses who were interviewed by Officer Hanna will be testifying, their testimony is expected to relate only to the fraudulent charges on their credit cards; they have no knowledge, the Government represents, of whether Defendant (or anyone else) committed the fraud at issue.

---

[5] For this reason, Defendant's case is unlike *United States v. Coleman*, where the court held it was "clear" that the Government would "almost certainly rely on some out-of-court statements of [an agent] that will make him subject to impeachment as a hearsay declarant at trial." No. 1:19-CR-22-RJA-MJR, 2023 WL 5020433, at *10 (W.D.N.Y. May 5, 2023), *report and recommendation adopted* 2023 WL 4781903 (W.D.N.Y. July 27, 2023). In *Coleman*, special agent Joseph Bongiovanni had played a lead role in the narcotics investigation underlying the indictment, and was subsequently indicted on drug conspiracy and public corruption charges. *Id.* at *12. Although none of the misconduct related to the defendant's guilt or innocence, the court still ordered some disclosures under *Giglio*—but not *Brady*. *See id.* at *10. The court only ordered that the Government turn over, as potentially relevant impeachment material, (1) a letter from the Department of Justice to Bongiovanni regarding his suspension and related criminal charges; and (2) records related to a complaint against Bongiovanni in September 2020 and the outcome of the internal investigation of the complaint. *Id.* at *11. The court found "the balance of the information contained in [Bongiovanni's] personnel files is neither exculpatory nor does it qualify as *Giglio* material." *Id.* at *11. Further, it is worth noting that another court, in a different criminal case where Bongiovanni had also been a lead agent, rejected a defendant's similar motion for *Brady* and *Giglio* material entirely. The court found that "information that Bongiovanni engaged in misconduct or criminal activity during his investigation *of other criminal cases* is neither favorable to [defendant] nor material to his guilt," and held the Government would only need to disclose *Giglio* material if Bongiovanni was named as a government witness. *United States v. Brown*, No. 1:19-CR-222 EAW (MJR), 2020 WL 2028538, at *6–7 (W.D.N.Y. Apr. 28, 2020) (emphasis in original).

The jury will be able to assess their credibility based on their testimony, and it appears highly unlikely such testimony will put Officer Hanna's credibility at issue.[6]  Finally, Agent Morrison's testimony is not expected to implicate the credibility of Officer Hanna.

In sum, Defendant has not put forth a non-speculative theory as to why the materials in Officer Hanna's internal affairs file may be favorable to the accused as either exculpatory or impeaching.  Although the Court assumed without deciding that the evidence was favorable to the accused in its bench ruling, the Court now finds that it is not.

B. Suppression

Next, even assuming that the evidence was favorable to Defendant, the Court finds that none of the evidence was suppressed.  In its bench ruling, the Court found that the notice and agreement were not suppressed because the Government filed an *ex parte* motion seeking the Court's views about potential disclosure; but the two underlying investigative reports had been, because the reports were in the Government's constructive possession, but were not raised as part of that *ex parte* motion.  Upon further reflection, the Court need not have drawn that distinction, nor found that "suppression," as a term of art, occurred here.

Suppression is not simply a "failure to disclose the favorable information."  *Jackson*, 345 F.3d at 73.  The Second Circuit held in *Coppa* that "the Government suppresses evidence within the meaning of *Brady* only if it fails to disclose *Brady* and *Giglio* material in time for its effective use at trial or in a plea proceeding. . . ."  *Coppa*, 267 F.3d at 146.  Although cases post-dating *Coppa* have not replicated its language regarding timing, the Second Circuit's jurisprudence makes clear that courts should consider the timing of the disclosure under the suppression prong.  *See*

---

[6] Defendant argues that Officer Hanna's credibility may be relevant to one particular alleged victim who refuses to testify at trial.  The Government has represented, however, that that witnesses refuses to testify for personal reasons.  Defendant's argument is too speculative to credit.

*DiSimone v. Phillips*, 461 F.3d 181, 197 (2d Cir. 2006) ("[W]e do not doubt that withholding the data *until near the close of the prosecution's case* constituted suppression.") (emphasis added)). A timing-based analysis makes sense, in light of the fact that *Brady* and its progeny are concerned with whether the defendant receives a fair trial, *Bagley*, 473 U.S. at 675, and that the remedy for a *Brady* violation is vacatur of the conviction and an order for a new trial, in which the defendant will have the benefit of the previously undisclosed information. *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014). It is therefore appropriate for the Court to consider the timing of the disclosure under the suppression prong, rather than the prejudice prong, as it did in in its bench ruling.

The Court does not accept the Government's proposal to assess the suppression prong in light of the six-month postponement of the trial until May of 2024, however, because that postponement was necessary for other reasons. Rather, the Court finds it appropriate to gauge whether Defendant had the information in time to make effective use of it for the November 2023 trial date, as Defendant suggests. The Court denied the motion to dismiss the indictment before it was informed by the parties of the need to suspend the trial for other reasons. For purposes of this ruling, the Court is only elaborating upon its bench ruling from the perspective of that moment in time—even if that ruling was made only minutes before the new information that necessitated the continuance was brought to the Court's attention.

As the case stood in November of 2023, the Court finds the 36 pages of evidence was available to defense counsel "in time for effective use" at trial because Defendant received it on Monday afternoon (November 27), with evidence to begin on Wednesday morning (November 29). *See Coppa*, 267 F.3d at 146. This was sufficient time to digest the material and determine whether and how to use it at trial, notwithstanding the other demands of trial preparation. The

disclosure was simply unlike others made on the eve of trial that have been found to violate *Brady*. *See Leka*, 257 at 100–03 (finding a *Brady* violation when key eyewitness identified by name only three days before trial, in a trial that rested solely on eyewitness testimony).

It is also well-settled that evidence is not "'suppressed'" if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *Id.* at 100. Here, there is no dispute Defendant had more than the essential facts, by virtue of receiving the information from the FOIA request. Therefore, there could have been no "suppression." *See United States v. Esposito*, 834 F.2d 272, 275 (2d Cir. 1987) (finding no *Brady* violation where defendant "had actual possession of the [potentially exculpatory] transcripts prior to trial"). The fact that defense counsel sent a FOIA request seeking this information in October of 2023—perhaps precisely because the Government had not listed Officer Hanna as a trial witness—suggests that counsel was aware that Officer Hanna's personnel file might contain potentially pertinent information. This dispels an argument of complete surprise. *See DiSimone*, 461 F.3d at 197 (noting "the remarkable specificity of defense counsel's *Brady* requests" may be "evidence of this awareness"). As further support that it had enough time to digest the material, defense counsel expressly rejected the Court's suggestion of a brief continuance of the trial date; it only sought the extreme sanction of dismissal as a remedy to this purportedly late disclosure.

For these reasons, the Court finds that none of the materials in Officer Hanna's internal affairs file were "suppressed"—*i.e.*, not possessed by Defendant with enough time to make effective use of the information at trial—even assuming they were favorable to the accused.

### C. Materiality/Prejudice

As noted above, there is no *Brady* violation unless the suppressed evidence is material to the result of the proceeding. *Bagley*, 473 U.S. at 682; *Kyles*, 514 U.S. at 434. "Although the

government's obligations under *Brady* may be thought of a constitutional duty arising before or during the trial," the scope of the duty "is ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial." *Coppa*, 267 F.3d at 140 (*Strickler*, 527 U.S. at 281). The inquiry is typically retrospective because *Brady* and its progeny are concerned with whether the defendant was deprived of a fair trial. *Bagley*, 473 U.S. at 675. Here, the result of the trial is yet unknown. Rather than seek the vacatur of a conviction and a new trial, Defendant's motion seeks dismissal of the indictment *before trial* as a remedy for egregious prosecutorial misconduct.

There is little case law defining materiality in the context of a pre-trial *Brady* motion seeking the dismissal of the indictment as a remedy. It is clear, however, that dismissal of an indictment is an "extreme sanction" and a "drastic remedy," appropriate "only when it is otherwise 'impossible to restore a criminal defendant to the position that he would have occupied vis-à-vis the prosecutor' or when there is a 'widespread or continuous pattern of prosecutorial misconduct.'" *United States v. Halloran*, 821 F.3d 321, 342 n.14 (2d Cir. 2016) (quoting *United States v. Fields*, 592 F.2d 638, 647 (2d Cir. 1978)). In *United States v. Pizzaro*, Nos. 19-2391, 19-24219, 2023 WL 3332539, (2d Cir. May 10, 2023) (summary order), the Second Circuit suggested that lost "time to investigate potential leads" could potentially serve as an "extraordinary condition[]" which, in the appropriate case, might justify dismissal. *Pizzaro*, 2023 WL 3332539 at *1; *see also United States v. Nordlicht*, No. 16-cr-00640 (BMC), 2019 WL 235640, at *3 (E.D.N.Y. Jan 16, 2019) ("Other than timing, defendants cannot point to any other identifiable prejudice that they have faced. The Court cannot say, then, that the Government has violated its *Brady* obligations merely by not producing this material earlier."). One district court has suggested that "extra effort, expenses, and energy" expended by defense counsel in response to Government misconduct may qualify as

prejudice, in addition to any "truncated pretrial timeframe to investigate leads." *United States v. Espinal*, 96 F. Supp. 3d 53, 69 (S.D.N.Y. Mar. 10, 2015) (Chin, U.S.C.J.) (finding that Government had suppressed evidence favorable to the defendant, but that no *Brady* violation occurred because trial had been adjourned to allow defendant time to consider the belatedly-disclosed information, and declining to dismiss indictment).

The Court need not revisit its ruling that dismissal of the indictment is unwarranted here. Defendant has not identified any particular investigative leads he may have pursued had he received the information earlier, and he explicitly rejected the idea of a trial continuance that could have facilitated such an investigation. Nor is dismissal required as a sanction for egregious prosecutorial misconduct. The Government acted appropriately when it filed an *ex parte* motion to bring the notice and agreement to the Court's attention and inquire whether it should be disclosed to defense counsel under *Brady* and its progeny. Though that motion could have been filed earlier, and it would have been advisable to have obtained and presented the underlying reports to the Court as part of the *ex parte* motion, the Government ultimately did not violate its *Brady* disclosure obligations. Defense counsel alludes to a need to deter repeated *Brady* violations by the United States Attorney's Office in this District, but there is no basis in the record for finding a widespread or continuous pattern of prosecutorial misconduct.

## V.     CONCLUSION

For these reasons, the Court has reconsidered certain findings in its bench ruling, and the motion to dismiss the indictment is DENIED on the grounds set forth in this written ruling.

Defendant's motion to seal the memorandum in support of his motion to dismiss the indictment and supporting exhibits, ECF No. 103, is DENIED IN PART and GRANTED IN PART. The Government's motion to seal its supplemental opposition, ECF No. 128, is

GRANTED.  The Clerk of Court is directed to maintain the unredacted version of Defendant's memorandum, ECF No. 104, and the Government's supplemental memorandum, ECF No. 127, under seal.  Defendant's motion to seal Exhibit A, ECF No. 130, is DENIED, and the Clerk of Court is directed to unseal ECF No. 131.  Defendant shall file a redacted version of its memorandum and exhibits at ECF No. 104 making public the information discussed in this ruling by **March 25, 2024**.

      **SO ORDERED** at Hartford, Connecticut, this 11th day of March, 2024.

            */s/ Sarala V. Nagala*

            SARALA V. NAGALA
            UNITED STATES DISTRICT JUDGE