UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:23-cr-00013-SVN |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| DICKSON ALORWORNU, | ) | |
| *Defendant*. | ) | September 19, 2024 |

**RULING ON DEFENDANT'S SECOND MOTION TO DISMISS THE INDICTMENT**

Sarala V. Nagala, United States District Judge.

On January 25, 2023, a grand jury sitting in the District of Connecticut indicted Defendant Dickson Alorwornu on two counts of wire fraud in violation of 18 U.S.C. § 1343. On November 27, 2023, on the eve of the first jury selection in this case, Defendant moved for dismissal of the indictment, claiming the Government violated its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny by belatedly disclosing material regarding an internal investigation of a potential defense witness. The Court denied the motion in a bench ruling, which was later followed by a written decision. *See United States v. Alorwornu*, No. 3:23-CR-00013-SVN, 2024 WL 1050326 (D. Conn. Mar. 11, 2024). Separately, the trial was continued to May of 2024, in light of newly discovered evidence that the Government shared with defense counsel the morning after jury selection. *See* Order, ECF No. 119.

On May 27, 2024, the eve of the second jury selection in this case, the Government disclosed further information to defense counsel following a review of its files before trial. The Court ordered the Government to make further disclosures to Defendant on May 28, 2024, *see* Order, ECF No. 163. Ultimately, in light of those disclosures and in an abundance of caution, the Court again granted a trial continuance, over the Government's objection. *See* Order, ECF No.

168. Shortly thereafter, Defendant filed the instant (second) motion to dismiss the indictment pursuant to *Brady* and various discovery rules, based on prosecutorial misconduct.  *See* Second Mot. to Dismiss, ECF No. 184.  Alternatively, Defendant requests that the Court sanction the Government by prohibiting it from introducing certain other evidence against him at trial.

For the reasons discussed below, the Court DENIES Defendant's second motion to dismiss the indictment and will not impose the alternative sanctions Defendant seeks.

## I.      FACTUAL BACKGROUND

The indictment charges that, from on or about December 14, 2017, through at least February 26, 2018, in the District of Connecticut and elsewhere, Defendant, knowingly and with intent to defraud, devised a scheme whereby he obtained individuals' credit card information without their permission, provided materially false information to the University of Connecticut ("UConn") in order to establish student accounts under false names, caused the student accounts to be funded by initiating charges on the stolen credit cards, and then sought refunds from UConn of those funds into bank accounts he controlled.  *See* Indictment, ECF No. 1.  The indictment charges two counts of wire fraud in violation of 18 U.S.C. § 1343 based on an interstate electronic communication from a payment service company in the amount of $500 on February 3, 2018, and an interstate electronic communication from a payment service company in the amount of $2,000 on January 29, 2018.  *Id.* at 2.  Defendant has pleaded not guilty to the charges in the indictment and invokes his constitutional right to a trial by jury.

The Government alleges that the charged fraud involved the use of the email accounts gwenfingers@gmail.com under the alias "Tammy Curry," and bskowronek321@gmail.com, under the alias "Brandon Skowronek."  Gov't. Opp. Br., ECF No. 206 at 2.

## II.   PROCEDURAL HISTORY

The factual and procedural background surrounding Defendant's first motion to dismiss the indictment is discussed in detail in the Court's decision on that motion, and the Court assumes familiarity with that decision. That decision noted that the trial was continued for "other reasons," but did not go into detail on that issue. *See Alorwornu*, 2024 WL 1050326 at *1. Those other reasons are relevant now.

On the morning of November 29, 2023, the Government sent defense counsel a letter stating, in its entirety:

> "The government received records from Google yesterday which appear to show that, from approximately March 2023 through November 2023, the Bitcoin address shown in GX237-2 has been receiving funds from a victim of romance fraud that is being perpetrated by an individual in Ghana. The victim has been communicating with a "Collins Smith," a name which appears in GX222-2."[1] Def.'s Second Mot. to Dismiss Ex. A, ECF No. 184-2 at 2.

More specifically, the Government had received, on November 28, 2023, records from Google that seemed to demonstrate that the user of an email account, 20thconsultant@gmail.com, based in Ghana, was perpetrating a romance fraud using the alias "Collins Smith." ECF No. 206 at 5. Defendant moved for a continuance in light of the need to investigate this new information, which was granted. Jury selection was rescheduled for May 28, 2024.

On May 27, 2024, the Government sent defense counsel a letter "disclos[ing] information" collected by Chase Bank USA, N.A. ("Chase"). Def.'s Second Mot. to Dismiss Ex. B, ECF No. 184-3. The Chase information appeared in a Suspicious Activity Report ("SAR"), which is typically subject to disclosure restrictions. The Government disclosed that Chase had identified

---

[1] The Court had previously found both of the exhibits referenced in the Government's letter admissible as direct evidence of the charged fraud (GX237) and pursuant to Federal Rule of Evidence 404(b) (GX222), denying Defendant's pretrial motion *in limine* on that issue. *See* Order, ECF No. 91. In advance of the second trial, the Court denied Defendant's motion for reconsideration of that ruling. *See* Order, ECF No. 155.

3

suspected fraud and identity theft occurring between August 6, 2017, and November 5, 2017, in two accounts, which were associated with a number of identities. *Id.* These identities included identifying information that appears elsewhere in the Government's exhibits and productions—for example, the Chase SAR mentioned the email address humble5y@gmail.com, which was linked to the 20thconsultant@gmail.com account identified by the Google warrant, *see* ECF No. 206 at 6; the name "Tammy Curry;" the email address "bskowronek321@gmail.com;" and an address in New Jersey that defense counsel believed the Government would argue was Defendant's business address, *see* Def.'s Reply in Supp. of Second Mot. to Dismiss Ex. C, Partial Tr. of May 29, 2024, Proceedings, ECF No. 210-2 at 13. In total, Chase had identified 94 potentially fraudulent transactions. The SAR was dated and appeared to have come into the Government's possession in March of 2018, but was initially set aside as immaterial and not subject to disclosure. *See* ECF No. 206 at 2, 4–5. It resurfaced following an agent's review of the case file days before the second jury selection. *Id.* at 7. Although the Government viewed this information as "arguably cumulative" given that there was already evidence of potentially shared accounts and aliases in the record, it nonetheless disclosed the basic information contained in the SAR to Defendant via letter. *Id.*; ECF No. 184-3 at 2–3.

Defendant contends this evidence was exculpatory and relevant because it demonstrated that individuals other than him (including, potentially, an individual in Ghana) were "using pseudonyms, email accounts, and bitcoin addresses that the government had associated with [Defendant] and [is] alleging he solely used in connection with the charged frauds." ECF No. 184-1 at 8. In other words, any evidence that the alleged "instrumentalities of fraud" were accessible and/or shared by multiple people other than Defendant, especially in or around the time period of the charged fraud, could lead to reasonable doubt regarding Defendant's guilt. *See id.* at 11. The

Government, on the other hand, contends that the SAR information has nothing to do with the charged fraud, or at least that any connection between the Chase accounts at issue in the SAR and the charged fraud (which allegedly involved different accounts) is far too attenuated to be exculpatory for Defendant. *See* ECF No. 206 at 4, 10, 15–18.

Again, Defendant sought a continuance of the trial due to the need to investigate and fully digest and appreciate the underlying information from the SAR, including how it might support an argument that Defendant was not the sole perpetrator—or the perpetrator at all—of the charged fraud. The Court agreed that further time was necessary for Defendant to "investigate this new information and to reach a fully considered decision on how to make use of the information at trial." Order, ECF No. 168. Accordingly, the Court granted Defendant's motion and again continued the trial, this time to October 22, 2024. In doing so, it expressed its frustration with the Government's conduct, noting that the Government did not offer a satisfying explanation for the failure to disclose the information sooner, and that its conduct had resulted in a significant burden to the judicial system as well as to Mr. Alorwornu. *Id.* The Court ordered the Government to file a report detailing the circumstances that led to finding and disclosing the SAR and a certification that the prosecuting AUSAs had personally reviewed all files connected to the case and had complied with their discovery obligations. *Id.* A few weeks later, Defendant filed the instant motion to dismiss the indictment, contending primarily that the indictment must be dismissed either due to the Government's violations of *Brady* or as a sanction for prosecutorial misconduct. *See* ECF No. 184-1 at 8.

### III. LEGAL STANDARD

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to

guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  There are three components of a *Brady* violation:  "[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." *United States v. Jackson*, 345 F.3d 59, 71 (2d Cir. 2003) (alterations in original) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

Relating to the first component, evidence that is favorable to the accused includes "evidence that tends to exculpate the accused[.]" *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001).  Exculpatory material, often referred to as "*Brady* material," is information that "relates to the defendant's guilt or innocence." *United States v. Ulbricht*, 858 F.3d 71, 112 (2d Cir. 2017), *abrogated on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018).

As to the second component, evidence is suppressed for *Brady* purposes "only if [the Government] fails to disclose *Brady* . . . material in time for its effective use at trial or in a plea proceeding." *Coppa*, 267 F.3d at 146.  "[T]he time required for the effective use of a particular item of evidence will depend on the materiality of that evidence . . . as well as the particular circumstances of the case." *Id.*

Finally, under the prejudice or "materiality" prong, courts ask "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).  The Supreme Court has elaborated that "a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).  The question is whether "the favorable evidence could

reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435.

The standard "remedy for a *Brady* violation is *vacatur* of the judgment of conviction and a new trial in which the defendant now has the *Brady* material available to [him]." *United States v. Halloran*, 821 F.3d 321, 342 n.14 (2d Cir. 2016) (quoting *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (*en banc*)). Dismissal of the indictment, on the other hand, is an "'extreme sanction' . . . appropriate only when it is otherwise 'impossible to restore a criminal defendant to the position that he would have occupied vis-à-vis the prosecutor,' or when there is a 'widespread or continuous' pattern of prosecutorial misconduct." *Id.* (quoting *United States v. Fields*, 592 F.2d 638, 647–48 (2d Cir. 1978)). It is generally appropriate only when the prosecution engages in "egregious and deliberate misconduct or act[s] flagrantly, willfully, and in bad faith." *United States v. Mangano*, No. 16-CR-540 (JMA), 2022 WL 59697, at *3 (E.D.N.Y. Jan. 6, 2022) (collecting cases) (internal quotation marks and citations omitted).

## IV. DISCUSSION

For the reasons discussed below, Defendant's motion to dismiss the indictment, and his alternative request for other sanctions, are DENIED.

### A. *Brady* Violation

Even assuming *arguendo* that the SAR evidence is exculpatory, and was suppressed by the Government—issues as to which the Court explicitly makes no findings—the Court finds that there has been no *Brady* violation here because Defendant has not demonstrated sufficient materiality or prejudice in light of the trial's continuance.

As the Court has previously noted, there is "little case law defining materiality in the context of a pre-trial *Brady* motion seeking the dismissal of the indictment as a remedy." *See*

7

*Alorwornu*, 2024 WL 1050326, at *10. This is because, ordinarily, the inquiry is retrospective in its focus on the outcome of the trial. *See Coppa*, 267 F.3d at 140 (citing *Strickler*, 527 U.S. at 281). In this case, there has been no trial, and therefore no outcome, as the Court granted Defendant's request for a five-month continuance in light of the Government's belated disclosure. Accordingly, the Court cannot conclude that Defendant has "established a reasonable probability that earlier disclosure of the [evidence] would have changed the verdict at trial." *See Halloran*, 821 F.3d at 341 (finding no *Brady* violation where evidence was disclosed eight days after the beginning of trial). The Court declines to engage in Defendant's hypothetical exercise of considering whether these disclosures "would have been grounds for a new trial had [they] been belatedly disclosed post-trial," *see* Def.'s Reply in Supp. of Second Mot. to Dismiss, ECF No. 210 at 3, given that those circumstances are not presented here. *See United States v. Espinal*, 96 F. Supp. 3d 53, 69 (S.D.N.Y. 2015) (Chin, U.S.C.J.) (considering prejudice in light of continuance).

Thus, in light of the five-month continuance of trial that was granted to enable Defendant to further investigate the new information, the Court holds that the Government's disclosure of the SAR the day of jury selection—while patently not ideal—did not constitute a *Brady* violation. *Cf. Halloran*, 821 F.3d at 342 (week-long continuance gave defendant time to make effective use of evidence, and therefore was not *Brady* violation); *Espinal*, 96 F. Supp. 3d at 69 (recognizing prejudice to defendant "in the sense that the trial has been delayed" and acknowledging defendant's "important concern[]" of necessitated piecemeal trial preparation by defense counsel, but finding no *Brady* violation because Defendant had not demonstrated sufficient prejudice where trial was twice continued by two months in response to belated government disclosures).

Nor does the Court agree with Defendant that the totality of the conduct in this case amounts to the kind of "'widespread or continuous' pattern of prosecutorial misconduct" that

8

would justify the "extreme sanction" of dismissing the indictment. *Halloran*, 821 F.3d at 342 n.14 (quoting *Fields*, 592 F.2d at 647, 648). For one, it bears emphasizing that the Court, despite its misgivings with the Government's conduct, has now twice found that no *Brady* violation has occurred. The lay of the land with respect to the three challenged disclosures thus stands as follows: (1) one disclosure that was found not to constitute a *Brady* violation nor to necessitate a continuance of trial (the materials relating to Officer Hanna); (2) one timely disclosure that was found to necessitate a continuance given the proximity of the disclosure to the first trial (the Google warrant return); and (3) one belated disclosure that did not violate *Brady* but necessitated a second continuance of the trial (the SAR). Although the timing of these disclosures has been far from ideal, they ultimately were made before trial, and it is difficult to conclude that there is a "widespread or continuous pattern of prosecutorial misconduct" in this case when no *Brady* violation has been found. The Court notes that the disclosure of the SAR was the most troubling in terms of its timing, given the Government's apparent possession of the document as far back as 2018. Nonetheless, even if the disclosure of the SAR had violated *Brady*, the dismissal of the indictment would not necessarily follow in light of the lesser remedial measures taken by the Court. *See United States v. Pizarro*, No. 19-2391, 2023 WL 3332539, at *1 (2d Cir. May 10, 2023) (summary order) (no prejudice to defendants where district court granted four-month continuance following belated disclosures of *Brady* material); *see also United States v. Moses*, No. 6:19-CR-06074 (EAW), 2021 WL 5309831, at *6 (W.D.N.Y. Nov. 14, 2021) (finding dismissal unwarranted where "any potential prejudice to Defendant [from mid-trial disclosure] [could] be obviated" by other measures).

Furthermore, although the Court shares Defendant's justifiable frustrations with the trial continuances in this case, it does not find that the prosecution's actions have been egregious,

9

deliberate, flagrant, willful, or in bad faith. *See Mangano*, 2022 WL 59697, at *3. With respect to the material regarding Officer Hanna, the Government "acted appropriately" when it sought judicial guidance on the need for disclosure following Officer Hanna's inclusion as a defense witness. *See Alorwornu*, 2024 WL 1050326, at *10. With respect to the Google warrant return, the Government disclosed the material to the defense within a short time after receiving it; although the proximity to trial was an unfortunate coincidence, it was not within the Government's control. And, with respect to the SAR, the Court credits the Government's explanation that the late disclosure was the result of inadvertence, and not bad faith, given that the SAR's importance was more fully realized upon receiving the results of the Google warrant. Of course, the Court does not condone the Government's conduct and recognizes that the unfortunate timing of the SAR's disclosure *was*, ultimately, in the Government's control. Nonetheless, while Defendant levies many accusations at the Government, and draws many negative inferences from the disclosures in this case and others, *see* Def.'s Supp. Reply Br. in Supp. First Mot. to Dismiss, ECF No. 129 at 4–7, the Court "will not infer that the Government acted in bad faith without more convincing evidence." *United States v. Nordlicht*, No. 16-CR-00640 (BMC), 2019 WL 235640, at *3 (E.D.N.Y. Jan. 16, 2019); *see also Moses*, 2021 WL 5309831, at *6 ("While the Court does not condone the government's failure to turn over [evidence], the inadvertent error in this case does not even approach the kind of conduct necessary to support dismissal as a remedy.").[2]

---

[2] Defendant also suggests that further representations and disclosures made by the Government, including statements regarding the existence of FBI 302 reports and other document productions, have been misleading or problematic in some way. *See, e.g.*, ECF No. 210 at 3 (challenging statements by prosecutor regarding 302 reports), 3 n.2 (noting that defense counsel may have received report one month after its receipt by the Government), 4 n.3 (noting that recent production includes emails and identifies a potential witness that "the defense does not believe it had received previously"), 5 n.5 (noting that the "three discovery issues the Court has been made aware of are not the only issues counsel has had difficulty addressing with the government"). Without more information or context regarding these instances, the Court declines to find that they support Defendant's position that dismissal of the indictment is a necessary sanction for the alleged misconduct in this case.

In light of the discussion above, the Court does not find that dismissal of the indictment is warranted in this case, either under *Brady* or as a sanction for prosecutorial misconduct.[3]

### B. Alternative Remedy

The Court also declines to adopt Defendant's alternative proposal of excluding the Rule 404(b) evidence this Court has already (twice) deemed admissible. *See* ECF No. 184-1 at 9–10. Defendant offers no case or other authority suggesting that the exclusion of otherwise-admissible evidence that is itself unclouded by any disclosure issues may be an appropriate sanction for a *Brady* violation or for prosecutorial misconduct. *See id.*; ECF No. 206 at 28 (noting same). Furthermore, the SAR information and evidence derived therefrom goes to the weight of the Government's Rule 404(b) evidence, not its admissibility. As Defendant recognizes, he has the opportunity to use the SAR information and evidence derived therefrom to "weaken [the] assertion[s]" the Government is expected to make with respect to the 404(b) evidence. ECF No. 184-1 at 9; *see also* Order, ECF No. 155 (recognizing that evidence from Google warrant return goes to the weight of the Government's 404(b) evidence, and not its admissibility). In any event, because the "more narrow remedial measures" of continuing the case and requiring the prosecutors to certify they have personally reviewed all case files have been undertaken, further sanctions are not warranted at this time. *See Moses*, 2021 WL 5309831, at *6.[4]

---

[3] The Court also finds that dismissal of the indictment is not required by the other standards invoked by Defendant— "the Standing Order on discovery, Federal Rules of Criminal Procedure 5(f) and 16, [and] the Due Process Protections Act," *see* ECF No. 184 at 1. While Defendant devotes little attention to these standards in his motion, he recognizes that these standards "require the prosecution to comply not only with *Brady* and its progeny, but also to produce discovery in a timely manner to the defense so that they can conduct a reasonable investigation and provide effective assistance of counsel." ECF No. 184-1 at 5. Even under these potentially lower standards, *see* ECF No. 206 at 22– 23, dismissal of the indictment is not warranted. *See, e.g., United States v. Shea*, No. 20 CR. 412-4 (AT), 2022 WL 1443918, at *4 (S.D.N.Y. May 6, 2022) (dismissal of the indictment is not an "appropriate sanction" for violation of Court's order where there was no bad faith); *Nordlicht*, 2019 WL 235640, at *4 (disclosure four months before trial, regardless of compliance with Rule 16, did not demonstrate the "necessary prejudice required for dismissal of the indictment or to preclude the materials from trial").

[4] The Court also declines to precisely "outline the sanctions that will be applied" if another interruptive disclosure occurs in this case. *See* ECF No. 184-1 at 10. Needless to say, further questionable disclosures by the Government in this case will be viewed extremely skeptically by this Court.

11

## V. CONCLUSION

For the reasons described herein, Defendant's second motion to dismiss the indictment is DENIED.

**SO ORDERED** at Hartford, Connecticut, this 19th day of September, 2024.

        */s/ Sarala V. Nagala*
        SARALA V. NAGALA
        UNITED STATES DISTRICT JUDGE